UNITED STATES DISTRICT COURT                b

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| ROY JUNIOR KNIGHT | CIVIL ACTION 1:16-CV-00998 |
| VERSUS | JUDGE TRIMBLE |
| U.S. COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Roy Junior Knight appeals the denial of his application for disability insurance benefits.  The appeal is denied.

I.  Background

Roy Junior Knight ("Knight") filed an application for disability insurance benefits ("DIB") (Doc. 7-1, p. 105/304), alleging a disability onset date of July 12, 2012 (Doc. 7-1, p. 105/304) due to severe back pain, arthritis of the back, depression, lower back pain, left and right leg pain, and severe leg weakness (Doc. 7-1, p. 47/304).  That application was denied by the Social Security Administration ("SSA") (Doc. 7-1, p. 58/304).

A de novo hearing was held before an Administrative Law Judge ("ALJ"), at which Knight appeared with his attorney and a vocational expert ("VE") (Doc. 7-1, p. 28/304).  The ALJ found that, although Knight suffers from severe impairments of a

lumbar compression fracture of the L1 vertebral body and kyphotic deformity[1] (Doc. 7-1, p. 14/304), he has the residual functional capacity to perform the full range of light work (Doc. 7-1, p. 18/304).  The ALJ concluded that, pursuant to Medical-Vocational Guideline 204.14, Knight was not disabled from the alleged onset date of July 12, 2012 through the date of the decision on March 2, 2015 (Doc. 7-1, pp. 22-23/304).

The Appeals Council denied Knight's request for review of the ALJ's decision (Doc. 7-1, p. 5/304), and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Knight then filed this appeal for judicial review of the Commissioner's final decision (Docs. 1, 8, 10), which the Commissioner answered (Docs. 7, 9).  Knight raises the following issues for review on appeal:

1. The ALJ erred in the evaluation of medical evidence from the treating physician, Dr. Wild.

2. The ALJ erred in forming the Residual Functional Capacity as to Knight's limitations.

Knight's appeal is now before the Court for disposition.

---

[1] Kyphosis is a curving of the spine that causes a bowing or rounding of the back. This leads to a hunchback or slouching posture.  See MedlinePlus Health Information, Medical Encyclopedia: Kyphosis, at https://medlineplus.gov/ency/article/001240.htm (a service of the U.S. National Library of Medicine and the National Institutes of Health).

II.    <u>Summary of Relevant Facts</u>

    A.    <u>Medical Records</u>

Knight graduated from high school and completed a vocational school for carpentry (Doc. 7-1, p. 129/304). Knight has past relevant work as a carpentry job foreman (1984-2010) (Doc. 7-1, pp. 120, 129/304).

Knight was treated by Dr. Gary Rubenstein, a chiropractor, in April 2005 following an accident at work which caused low back pain (Doc. 7-1, pp. 218-220/304). In September 2013, an MRI of Knight's lumbar spine (taken for Dr. Rubenstein) showed a chronic prominent anterior wedge compression deformity of L1 with mild retropulsion of bone into the spinal canal, and varying degrees of mild multilevel neural foraminal compromise (Doc. 7-1, pp. 202, 221-22/304). Knight had no significant spinal or neural foraminal stenosis, and no evidence of acute fracture or spondylolisthesis (Doc. 7-1, pp. 202-03, 221-22/304).

Knight was admitted to the hospital on July 12, 2012 with a complaint of vomiting blood, which was found to be due to upper gastrointestinal bleeding (Doc. 7-1, pp. 167, 254, 258/304). On admission, Knight was diagnosed with an upper GI bleed, hypotension, anemia, and alcoholism (Doc. 7-1, p. 263/304). Dr. Darrell Hutson found Knight was suffering from anemia, alcohol abuse, hypokalemia, dementia/delirium secondary to alcohol abuse (improved on discharge), coagulopathy (resolved by discharge), and hyperglycemia (resolved by discharge), and acute renal failure (resolved by discharge) (Doc. 7-1, pp. 167, 176/304). Due to the upper GI bleed, Knight underwent an EGD (esophagogastroduodenoscopy) with endoscopic variceal

ligation (Doc. 7-1, pp. 171, 173/302). Dr. William Lyles diagnosed Knight with Los Angeles class B reflux esophagitis (Doc. 7-1, p. 172/304), portal hypertension, and alcohol abuse (Doc. 7-1, p. 174/304). Knight was prescribed Librium, Prilosec, multivitamins, K-Dur, and Metoprolol (for blood pressure), and given potassium chloride (Doc. 7-1, pp. 169-70/304). Knight had an abnormal ECG, and was noted to have had a prior anterior infarct at an undetermined time (Doc. 180/304), but his heart was within normal limits (Doc. 7-1, p. 237/304).

Knight remained in the hospital through August 3, 2012 (Doc. 7-1, p. 170/304). On July 22, 2012, Knight remained confused, requiring soft restraints due to pulling at his tubes, and had confused conversation (Doc. 7-1, p. 179/304). On discharge, Knight was instructed to follow up with outpatient mental health, avoid alcohol use, and report to the emergency room if he had rectal bleeding, blood in stools, vomited blood, or had increased confusion or fever greater than 100.6 (Doc. 170/304).

In September 2012, Knight was treated at the LSU Huey P. Long Medical Clinic for his history of alcohol abuse, GI bleeding, back pain, and fatigue (Doc. 7-1, p. 242/304). Knight was diagnosed with esophageal bleeding secondary to alcohol abuse, increased hypertension, and alcohol abuse (Doc. 7-1, p. 242/304).

In December 2012, Knight was evaluated by Dr. Devinder Verma, an internal medicine doctor who diagnosed cirrhosis of the liver and hypertension (Doc. 7-1, p. 229/304).

In February 2013, Knight was treated by Dr. Jay Piland for complaints of joint pain when doing any work, fatigue after walking 200 feet, feeling lightheaded and off

4

balance when moving from sitting to standing, and a bloated stomach (Doc. 7-1, p. 232/304). Dr. Piland diagnosed esophageal varices, cirrhosis, and hypertension (Doc. 7-1, pp. 233, 235/304).

In August 2013, Knight was treated by Dr. David Guillot (Doc. 7-1, p. 278/304). Knight's blood pressure was 132/90, he was obese, he had pain/tenderness, limited range of motion, and bilateral paravertebral muscle tenderness (Doc. 7-1, p. 278/304). Dr. Guillot found Knight suffers from: hypertension NOS, for which he prescribed Lisinopril; low back pain, for which he prescribed meloxicam and tramadol; GERD[2] for which he prescribed Nexium; and depression with anxiety, for which he prescribed citalopram (Doc. 7-1, p. 278/304). In September 2013, Knight complained of increased anxiety, and his medication was increased (Doc. 7-1, p. 206/304).

In October 2013, Knight reported a lot of back pain and no known injury, as well as joint pain, myalgia, swelling, and weakness (Doc. 7-1, p. 207/304). Knight stated that meloxicam and tramadol helped, but his muscles were locking up painfully (Doc. 7-1, p. 207/304). Dr. Guillot found "pain/tenderness, limited ROM, bilateral paravertebral muscle tenderness" (Doc. 7-1, p. 278/304). Knight was prescribed meloxicam, tramadol, and Flexeril for his low back pain, lisinopril for hypertension, omeprazole for GERD, and Xanax for depression with anxiety (Doc. 7-1, p. 207/304). In November 2013, Knight reported the pain was running down his leg and that his legs were weak (Doc. 7-1, p. 277/304). Dr. Guillot found Knight had "pain/tenderness, limited ROM" and continued his medications (Doc. 7-1, p. 277/304).

---

[2] Gastroesophageal reflux disease.

In December 2013, Knight underwent a disability determination examination with Dr. Michael A. Hall (Doc. 7-1, p. 208/304). Knight complained of severe low back pain, arthritis, depression, bilateral leg pain, and high blood pressure (Doc. 7-1, p. 208/304). Knight reported he has had back discomfort all his life, but within the last six to 12 months he has had low back pain with radiation to the bilateral pelvis and bilateral lower extremities, greater on the right side. (Doc. 7-1, p. 208/304). Knight further stated he can stand for one hour at a time and two hours in an eight hour period, walk on level ground for 15 minutes at a time, sit for 30 minutes at a time, lift five to 10 pounds, drive for 40 minutes at a time, sweep, mop, vacuum, cook, and do dishes (Doc. 208-09/304). Upon testing, Dr. Hall found Knight had a normal range of motion at the lumbosacral spine 5/5 strength at the bilateral lower extremities, could bend and squat, could walk on heels and toes, and had a full range of motion in bilateral hips, knees, and ankles (Doc. 27-1, p. 210/304). Knight also had 5/5 motor strength bilaterally in his upper and lower extremities and the proximal muscle groups, and appropriate sensation (Doc. 7-1, p. 209/304). In his mental status exam, Knight did not have any suicidal or homicidal ideations, and his affect and cognitive function were appropriate (Doc. 7-1, p. 209-304).

Dr. Hall concluded there was no evidence of end-organ damage secondary to high blood pressure; there was no clinical medical evidence as to a decrease in functionality secondary to his allegations of severe lower back pain, arthritis, and bilateral leg pain; and there was no clinical medical evidence as to a decrease in functionality secondary to depression (Doc. 7-1, p. 210/304).

In March 2014, Knight was evaluated at University Health in Shreveport, Louisiana (Doc. 7-1, p. 282/304). Dr. Kahlon did not see any evidence of chronic liver disease in the lab work (Doc. 7-1, p. 282/304). Knight complained of back pain, but had a normal gait (Doc. 7-1, p. 286/304). Knight was issued a lumbar corset (Doc. 701, p. 286/304). Dr. Elizabeth Wild found lumbar tenderness and abnormal extension and flexion in the lumbar range of motion, but he had normal leg raises bilaterally, and no numbness or weakness (Doc. 7-1, pp. 288-89/304). Dr. Wild noted Knight has a compression fracture of the L1 lumbar vertebra and a severe kyphotic deformity which could make him a candidate for surgery (Doc. 7-1, pp. 290-91/304).

In May 2014, Knight complained of pain in the mid-lumbar region, with associated muscle spasms, progressive for about 10 years, aggravated by sitting or standing for prolonged periods of time, and associated with occasional episodes of numbness and weakness in the legs which resolves (Doc. 7-1, p. 282/304). Knight reported mild improvement in symptoms with use of a lumber corset, but continued to have significant back pain and muscle spasms with intermittent episodes of numbness and weakness (Doc. 7-1, p. 282/304).

A CT scan of Knight's lumbar spine in May 2014 showed a compression fracture of L1 with severe loss of height and retropulsion of the posterior vertebral body causing narrowing of the thecal sac, and widening of the interspinous distances at T12-L1 indicating damage to the posterior ligamentous complex (Doc. 7-1, p. 268-304). That injury was unstable (Doc. 7-1, p. 268-304). There was also mild lumbar spondylosis with small anterior osteophyte formation, and aortoiliac athersclerosis

7

(Doc. 7-1, p. 268-304). However, on review, Dr. Wild found Knight was not recommended for surgery due to the chronicity of his injury, making it unamenable to surgical correction (Doc. 7-1, p. 298/304).

In August 2014, Knight continued to complain of back pain with intermittent radiation to the right leg, with weakness and paresthesias (Doc. 7-1, p. 298/304). X-rays again showed a thoracic spine fracture and stable collapse of the L1 vertebral body with kyphotic deformity (Doc 303/304). Knight was prescribed Celebrex, Flexeril, Nexium, Tramadol, Diovan, hydrocodone-acetaminophen, and methocarbamol (Doc. 7-1, p. 299/304).

### B. Administrative Hearing

The August 20, 2014 administrative hearing was held before an ALJ with Knight, his attorney and a VE (Doc. 7-1, p. 29/304). Knight testified that he was 51 years old, had a high school education, and had carpentry training (Doc. 7-1, p. 33/304). Knight was about 5'11" and weighted about 196 pounds (Doc. 7-1, p. 33/304).

Knight testified that he had worked as a carpenter since about 1981 (Doc. 7-1, p. 34/304). The heaviest weight he lifted was about 100 pounds (Doc. 7-1, p. 34/304). His tool belt weighed 30 to 40 pounds (Doc. 7-1, p. 34/304).

Knight testified he has not worked since July 17, 2012 because his back hurt too much (Doc. 7-1, p. 35/304). Knight testified that he was recently told that surgery was not an option for him because the injury is old (Doc. 7-1, pp. 35-36/304). Knight takes medication for his pain and changes positions (Doc. 7-1, p. 36/304). Knight is most comfortable sitting in his recliner (Doc. 7-1, p. 36/304).

During a typical day, Knight spends about 7 out of 8 hours in his recliner (Doc. 7-1, p. 40/304), and most of his time listening to the radio (Doc. 7-1, p. 42/304). His family helps him with cleaning, his mother cooks food for him, and he eats microwave meals (Doc. 7-1, p. 42/304). Knight drives once a week (Doc 7-1, p. 42/304).

Knight testified he can stand about 15 minutes at a time (Doc. 7-1, pp. 37, 41/304). The pain goes down his legs as a numbness with tingling and stinging (Doc. 7-1, p. 37/304). Knight testified he can walk a block, or about five minutes, without stopping before his lower back starts hurting (Doc. 7-1, pp. 37-38/304). Knight was given a back brace (Doc. 7-1, p. 38/304). Knight testified he has trouble bending from the waist to pick something up, cannot touch his toes, and can reach his kneecaps (Doc. 7-1, p. 38/304).

Knight testified he goes to a small convenience store about a quarter mile from his house (Doc. 7-1, p. 38/304). Knight testified he has difficulty sleeping due to back pain and cramping in his back and legs (Doc. 7-1, p. 39/304).

Knight testified that he does not have medical insurance, Medicaid, or Medicare (Doc. 7-1, p. 41/304).

Although Knight is a carpenter, he was unable to repair his own home so Habitat for Humanity repaired his roof for him (Doc. 7-1, p. 44/304). Knight admitted he once had a drinking problem, but had been sober for two years (Doc. 7-1, p. 44-45/304). Knight stated he has no income (Doc. 7-1, p. 44/304).

The VE testified that Knight's work as a carpenter was medium, SVP 7, DOT 860.381-0222 (Doc. 7-1, p. 44/304). The work was very heavy as performed (Doc. 7-1,

p. 44/304). The VE further testified that Knight has no transferrable work skills (Doc. 7-1, p. 45/304).

### C. ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Knight (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined at any step of the process that a claimant is or is not disabled, the sequential process ends. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120 (1995) (citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir. 1987)).

To be entitled to benefits, an applicant bears the initial burden of showing he is disabled. Under the regulations, this means the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing some work in the national economy. Greenspan, 38 F.3d at 237.

In this case, the ALJ found Knight has not engaged in substantial gainful activity since November 19, 2012, his disability insured status expired after December 31, 2014, and he has a severe lumber compression fracture of the L1 vertebral body and kyphotic deformity (Doc. 7-1, p. 14/304). However, Knight does not have an impairment or combination of impairments listed in or medically equal

to one listed in Appendix 1 (Doc. 7-1, p. 17/304). The ALJ also found Knight is unable to perform his past relevant work as a carpenter (Doc. 7-1, p. 22/304).

At Step No. 5 of the sequential process, the ALJ further found Knight has the residual functional capacity to perform the full range of light work (Doc. 7-1, p. 17/304). The ALJ found the claimant is closely approaching advanced age, has at least a high school education, and transferability of job skills is immaterial in his case (Doc. 7-1, p. 22/304). The ALJ concluded that, pursuant to Rule No. 202.14 of Table 1, Appendix 2 ("the grids"), Knight was not under a "disability" as defined in the Social Security Act at any time through the date of the ALJ's decision on March 2, 2015[3] (Doc. 7-1, p. 23/304).

## II. Law and Analysis

### A. Scope of Review

In considering Social Security appeals, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. See McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. See Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision,

---

[3] Since Knight's disability insured status expired after December 31, 2014, the date of the ALJ's decision in 2015 is not relevant.

but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. See Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. See Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. See Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981); see also Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings that are not supported by substantial evidence and to correct errors of law. See Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." See Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

### B. The ALJ did not err in evaluating the medical evidence from Dr. Wild.

Knight contends the ALJ erred in her evaluation of medical evidence from the treating physician, Dr. Guillot. Knight contends that Dr. Guillot's findings as to Knight's limited range of motion support his subjective complaints of pain. Knight argues the ALJ erred in relying primarily on the opinion of the consulting physician, Dr. Hall.

Because the treating physician is most familiar with the claimant's impairments, his opinion should be accorded great weight in determining disability. See Giles v. Astrue, 433 Fed. Appx. 241, 246–47 (5th Cir .2011) (citing Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." See Giles, 433 Fed. Appx. at 246-47 (citing 20 C.F.R. § 404.1527(d)(2)). Likewise, when a treating physician has reasonable knowledge of the impairment, his opinion is given more weight than an opinion from a non-treating physician. See id.

By contrast, the Commissioner may give less weight to a treating physician's opinion about a condition outside his area of expertise. See id. Treating physicians' opinions also receive greater weight "[w]hen the treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment." See id. The weight given to opinions from non-examining physicians depends on "the degree to which they provide supporting explanations for their opinions." See id.

An ALJ is free to reject a physician's opinion when good cause exists. Giles, 433 Fed. Appx. at 246–47 (citing Newton, 209 F.3d at 455). Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically

13

acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. Giles, 433 Fed. Appx. at 246–47 (citing Newton, 209 F.3d at 456).

Knight argues the ALJ erred in accepting Dr. Hall's findings as to Knight's range of motion instead of Dr. Guillot's findings, arguing that Dr. Guillot is a treating physician. However, Knight has had many physicians. It appears Dr. Guillot saw him only four times. The ALJ implicitly rejected Dr. Guillot's summary finding that Knight has a limited range of motion in his back. Dr. Guillot's findings were summary–he did not specify the tests conducted and give specific degrees for specific ranges of motion. The ALJ noted that Dr. Guillot had not imposed any specific limitations or restrictions on Knight's activities as a result of his alleged orthopedic impairments (Doc. 7-1, p. 17/304). The ALJ further noted that none of Knight's treating physicians had provided a specific opinion as to his residual functional capacity (Doc. 7-1, p. 21/304). Therefore, Dr. Guillot's conclusory finding that Knight's range of motion was "limited" is not supported by any clinical evidence.

Dr. Hall, however, was very specific in his range of motion testing and findings. Moreover, Dr. Hall conducted comprehensive range of motion testing, with straight leg raising, heel and toe walking and maneuvers, and squatting, with specific findings as to the precise ranges and limitations, which gave him a more accurate opinion of Knight's residual functional capacity. Dr. Hall's opinion as to Knight's residual function capacity is "well-supported by medically acceptable clinical and laboratory diagnostic techniques."

Knight further argues the ALJ erred in rejecting his subjective complaints of pain. While pain can be severe enough to create a disabling condition, the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled. Elzy v. Railroad Retirement Bd., 782 F.2d 1223, 1225 (5th Cir. 1986); Loya v. Heckler, 707 F.2d 211, 215 (5th Cir. 1983). The ALJ's decision on the severity of pain is entitled to considerable judicial deference. James v. Bowen, 793 F.2d 702, 706 (5th Cir. 1986); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987); see also Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991); Wren v. Sullivan, 925 F.2d 123, 128-29 (5th Cir. 1991). Hence, the law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints, and to articulate his reasons for rejecting any subjective complaints. Falco v. Shalala, 27 F.3d 162, 163-64 (5th Cir. 1994).

The ALJ made the following findings as to Knight's pain and credibility (Doc. 7-1, p. 21/304):

> In terms of the alleged lumbar compression fracture of the L1 vertebral body and kyphotic deformity, the undersigned finds that the objective medical evidence fails to support the claimant's subjective complaints.
> \*      \*      \*
> …The undersigned finds it reasonable to conclude that the claimant experiences some pain from his orthopedic impairments and has considered the effects of pain on his physical residual functional capacity in arriving at a conclusion that he was capable of performing light work.
>
> The claimant's hearing testimony regarding his activities of daily living is inconsistent with the information he provided in his Function Report, as well as the information he provided to Dr. Michael Hall, the consultative examiner. In the Function Report, the claimant stated he was able to prepare simple meals, take walks, drive, do laundry, go

grocery shopping with his family, wash dishes, and perform light household tasks. When consultatively evaluated by Dr. Hall in December 2013, the claimant stated he could dress and feed himself. He also stated he was able to perform sweeping, mopping, vacuuming, cooking, and dishwashing. However, at the hearing, the claimant testified his daily activities consisted of sitting in a recliner most of the day, listening to the radio, having his meals prepared and delivered by his mother, and requiring family members to help with household tasks. The claimant also testified that he was only able to stand for 15 minutes at a time and could only walk one block. These significant limitations appear to be self-imposed, as the objective medical evidence of record does not indicate these restrictions were recommended by any of the claimant's treating sources. The claimant testified he was unable to perform bending at the waist. However, this restriction is not the result of a limitation imposed by a physician. When consultatively evaluated by Dr. Michael Hall in December 2013, the claimant was noted to be able to perform bending, squatting, and walking on his heels and toes without complications. Dr. Hall noted he had full range of motion of the bilateral hips, knees, and ankles throughout all range of motion exercises. The claimant admitted that he received improvement of his pain from Tramadol and Meloxicam when treated by Dr. Guillot in October 2013.

Since the ALJ in this case has made the mandatory indication of the basis for her credibility choices concerning claimant's complaints, and since her choices are not unreasonable, her finding that Knight's pain would not prevent Knight from performing light work is proper. Carry v. Heckler, 750 F.2d 479, 485-86 (5th Cir. 1985).

Knight complains about confusion over the ALJ's findings. However, the ALJ found, in accordance with Dr. Hall's findings, that although Knight has an orthopedic impairment with some back pain (rejecting Dr. Roger's finding that Knight's orthopedic impairment was non-severe), he has a full range of motion in his back (rejecting Dr. Wild's vaguely stated opinion that Knight's range of motion is

16

"abnormal" and Dr. Guillot's unsupported opinion that Knight's range of motion is "limited") (Doc. 7-1, pp. /304).

Substantial evidence supports the ALJ's/Commissioner's finding that Knight has no decrease of functionality due to limitations of range of motion in his back or back pain.

3. **The ALJ did not err in determining Knight's residual functional capacity.**

Knight also contends the ALJ erred in determining his residual functional capacity, as it relates to his limitations. Specifically, Knight contends the ALJ erred in finding he can stand and/or walk up to 6 hours in an 8 hour day.[4] Knight contends the ALJ erred in rejecting the opinions of the treating physicians.

The ALJ noted that not one of Knight's treating physicians imposed limitations on his activities or made a residual functional capacity assessment. Dr. Hall, however, found there was no clinical medical evidence that indicated a decrease in functionality due to Knight's alleged back and leg pain (Doc. 7-1, p. 210/304). Dr. Hall specifically found Knight's deep tendon reflexes were normal; he had 5/5 strength bilaterally in the lower extremities; he could bend and squat without complication; he could walk on his heels and toes without complication; and he had a

---

[4] "Light work" is defined in 20 C.F.R. § 404.1567(b) and § 416.967(c) as follows:
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

Knight did not argue or show that he cannot sit most of the time with some pushing and pulling of arm or leg controls.

full range of motion bilaterally in his hips, knees, and ankles throughout all range of motion exercises (Doc. 7-1, p. 210/304). Knight did not provide any clinical, laboratory, or diagnostic evidence to the contrary.

Therefore, substantial evidence supports the ALJ's/Commissioner's finding that Knight has the residual functional capacity to perform the full range of light work.

### III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Knight's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this  29th  day of November, 2017.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge